**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

SUZANNE BLAKE and CATHERINE
SCALF,

               Plaintiffs,

     v.

CLASSIC ALASKA TRADING/BIG
RAY'S ALASKA, INC.,

             Defendant.

**Case No. 4:16-cv-00005-SLG**

Case No. 4:16-cv-00014-SLG
 (consolidated)

<u>**ORDER RE PENDING MOTIONS**</u>

Before the Court are Defendant Classic Alaska Trading/Big Ray's Alaska, Inc.'s

("Classic") Motion for Summary Judgment at Docket 83, Plaintiff Catherine Scalf's Motion

for Partial Summary Judgment at Docket 97, and Plaintiff Suzanne Blake's Motion for

Partial Summary Judgment Regarding Liability at Docket 100. The motions are fully

briefed.[1] Oral argument on the summary judgment motions was held on March 14, 2018.[2]

Also before the Court is Classic's Motion to Certify at Docket 137.[3]

---

[1] Docket 92 (Classic's Mem. in Support); Docket 111-1 (Classic's Corrected Mem. in Support);
Docket 98 (Ms. Scalf's Mem. in Support); Docket 101 (Ms. Blake's Mem. in Support); Docket
112 (Classic's Opp. to Plaintiffs' Mots.); Docket 113 (Plaintiffs' Opp. to Classic's Mot.); Docket
114 (Ms. Blake's Mem. in Support of Opp. to Classic's Mot.); Docket 120-1 (Ms. Blake's
Corrected Mem. in Support of Opp. to Classic's Mot.); Docket 125 (Classic's Reply); Docket 127
(Ms. Scalf's Reply); Docket 132 (Ms. Blake's Reply).

[2] Docket 136 (Minute Entry re Oral Argument); Docket 138 (Oral Argument Transcript).

[3] No opposition to the motion to certify was filed.

## BACKGROUND

On cross-motions for summary judgment, the Court must consider each motion separately to determine whether that party has met its burden with the facts construed in the light most favorable to the other side.[4] Because the Court will grant summary judgment to Classic as to Ms. Blake for the reasons set forth herein, the facts as to Ms. Blake are presented in the light most favorable to her. As to Catherine Scalf, the Court denies both motions, and thus the facts are presented from each side's perspective.

### A. Suzanne Blake

Plaintiff Suzanne Blake was hired by Classic on August 27, 2013 as an outside retail sales manager ("ORSM") at the Fairbanks Market downtown Big Ray's store.[5] Ms. Blake agreed to a salary of $62,000 per year.[6] Ms. Blake states that as ORSM, "[her] primary duties consisted of fielding internet and phone orders from customers and processing them, and manually updating the website. After receiving an internet order, [she] processed it through about a 90 step manual procedure. After receiving a phone order, [she] also processed it through a 97 step manual procedure."[7] Approximately three weeks after being hired, Ms. Blake was informed by Monty Rostad, her supervisor and a co-owner of the company, that she would also be taking on the duties of the Fairbanks

---

[4] *See* Fed. R. Civ. P. 56; *see also Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

[5] Docket 101-1 (Dec. 1, 2017 Affidavit of Suzanne Blake) at 1–2, ¶ 2.

[6] Docket 96-2 (Suzanne Blake Deposition Part I) at 48; Docket 93-4 (Exhibit D – Summary of Employment Terms).

[7] Docket 101-1 at 2, ¶ 4.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 2 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 2 of 40

Market Manager ("MM").[8]  As MM, she was assigned to report to Jesse Glamann, who was located in Kodiak, Alaska, with whom she communicated by phone and email; Mr. Rostad also oversaw her activities as MM.[9]  Ms. Blake states that as MM, her primary duties consisted of learning how to ring up cash register sales, assisting customers, cleaning the premises, making sales signs, straightening and folding clothes on display tables and racks, stocking apparel and clothes, mowing the lawn, shoveling snow, opening and closing computer files, opening and closing the store, alarming the security system, and other similar duties.[10]  Ms. Blake maintains that overall her primary duties were those of an ORSM and the daily non-exempt tasks she performed in that role.  She estimates those duties made up about 90 percent of her time at Big Ray's.[11]  Ms. Blake states that approximately "ten percent of [her] *actual* duties while working at Big Ray's consisted of performing as market manager."[12]

---

[8] Docket 101-1 at 2, ¶ 7.  Ms. Blake acknowledged in her deposition that being Fairbanks MM meant managing the two Fairbanks stores.  Docket 96-2 at 11 (Q: "So there are two Fairbanks stores, right?"  Ms. Blake: "Yes, the[re] are."  Q: "And so being the Fairbanks market manager means you're the manager of those two stores."  Ms. Blake: "That's correct.").

[9] Docket 101-1 at 2, ¶ 3.

[10] Docket 101-1 at 3, ¶ 9.  Classic disputes Ms. Blake's characterization of her work and provides evidence that her primary role was that of a manager responsible for supervision of employees.  *See, e.g.,* Docket (Dec. 1, 2017 Affidavit of Monty Rostad) at 14, ¶ 24.

[11] Docket 101-1 at 2, ¶ 6.

[12] Docket 114-1 (January 12, 2018 Affidavit of Suzanne Blake) at 8, ¶ 20.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 3 of 40

As part of her job duties, Ms. Blake supervised employees.[13]  On at least one occasion, Ms. Blake gave an employee a raise.[14]  On at least one occasion, Ms. Blake promoted an employee.[15]  Ms. Blake had the authority to grant employee time-off

---

[13] *See* Docket 96-2 at 18 (Q: "And so, as a manager, you were, in fact, Ryan Combelick's supervisor, were you not?"  Ms. Blake: "Well, it says I'm a supervisor [on the termination report]."  Q: "It says you're Ryan Combelick's supervisor, who is also a supervisor, correct?" Ms. Blake: "Yes, it does." . . . Q: "My question was, as Ryan Combelick's supervisor, are signing the termination report for the termination of his employment, right?" Ms. Blake: "Yes, I am."); Docket 96-3 at 7 (Q: "Kind of like when you were working alongside Samantha, and you were still Samantha's boss." Ms. Blake: "That was my job title.").  In Ms. Blake's affidavit in response to Classic's summary judgment motion, Ms. Blake disputes the specifics of Cindy Benford's statements regarding the number of employees Ms. Blake supervised while employed by Classic.  Docket 114-1 at 10, ¶ 24.  Ms. Blake states as follows:

> In her affidavit in support of summary judgment, Ms. Benford states that from February 2014 to March 2014, as market manager, I regularly supervised more than 15 full-time employees.  In fact, Cynthia L, Lauren C, Samantha R, were part-time employees.  Troy P. worked part-time for 3 to 4 weeks.  Ms. Benford further states in this affidavit that I supervised a total of twenty-two full-time employees as market manager, from October 2013 to November 2013.  In fact, Ashley F. [q]uit; Ann M. was a retail sales employee, and ORS employee; Austin B. was a part-time employee; Cynthia L. was a part-time retail sales and ORS employee; Heather V. was an intermittent retail sales and ORS employee; Samantha R. was a part-time on leave during this period; Trish P. was a part-time retail sales employee; and, Troy P. was a part-time retail sales employee.

Docket 114-1 at 10, ¶ 24 (citing Docket 85 (Affidavit of Cindy Benford) at 6, ¶ 6).  Therefore, Ms. Blake does not dispute that she was the supervisor of at least 11 full-time employees from February 2014 to March 2014 and 14 full-time employees from October 2013 to November 2013.  Furthermore, in an email to Jesse Glamann dated February 26, 2014, Ms. Blake appears to reference having 15 full-time and two-part time employees under her supervision.  Docket 134-8 (Email) at 1 (Ms. Blake stating "I have 15 FT, two PT that work 24 hours each.").

[14] Docket 96-2 at 16 (Q: "So what you're telling Mr. Glamann [in an email] was that you increased [an employee's] pay?"  Ms. Blake: "Yes."); *see* Docket 96-2 at 32 (Q: "You're the supervisor of Samantha Roy; you're the supervisor of Renate Yates; you're the supervisor of Anastasia Martinez, right?"  Ms. Blake: "That's correct." Q: "Okay.  And so you signed these forms to raise their pay rate, right?"  Ms. Blake: "That's correct.").

[15] Docket 96-2 at 30 (Q: "But Renate came to you to ask to be promoted, right?"  Ms. Blake: "Yes."  Q: "And you promoted her."  Ms. Blake: "I did.").  On another occasion, Ms. Blake's input led to an employee's promotion.  Docket 96-2 at 27.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 4 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 4 of 40

requests.[16]  Ms. Blake also hired employees.[17]  And Ms. Blake had and exercised the authority to fire employees.[18]  However, Ms. Blake has stated that a "[v]ery little part of [her] job was hiring and firing employees."[19]  Ms. Blake stated that she answered only to the three owners of the company, as well as to Jesse Glamann and Cindy Benford.[20]

Ms. Blake turned in her resignation from Big Ray's on September 27, 2014 because she felt she was not being paid for the overtime she was working.[21]  On January

---

[16] Docket 96-2 at 28–29 (Ms. Blake acknowledging during her deposition that as a manager she approved employee time-off requests); *see* Docket 94-2 (Exhibit AB – Employee Time-Off Requests).

[17] Docket 96-2 at 10 (Ms. Blake stating "I would guesstimate [I hired] approximately 10 [employees] in the 14 months"); Docket 93-7 (Exhibit G – Email) (Ms. Blake referring to people she has hired in email to Jesse Glamann).

[18] In her affidavit, Ms. Blake neither acknowledges nor disputes that she hired and fired employees, stating that "[r]esponsibilities for hiring, firing and disciplining of employees at Big Ray's w[ere] distributed amongst the floor supervisors, the MM, and HR."  Docket 101-1 at 3, ¶ 10.  Ms. Blake filled out and signed several termination reports. *See* Docket 93-8 (Exhibit H – Trisha P Termination Report); Docket 93-9 (Exhibit I – Mary F Termination Report); Docket 93-10 (Exhibit J – Bret B Termination Report); Docket 93-11 (Exhibit K – Yamil M Termination Report); Docket 93-12 (Exhibit L – Heather V Termination Report); Docket 93-13 (Exhibit M – Ryan C Termination Report); Docket 93-14 (Exhibit N – Jessica R Termination Report); Docket 93-16 (Exhibit P – Teresa N Termination Report); Docket 93-17 (Exhibit Q – Laurie W Termination Report); Docket 93-18 (Exhibit R – Donna T Termination Report); Docket 93-19 (Exhibit S – Roary H Termination Report); Docket 93-20 (Exhibit T – Alesha D Termination Report); Docket 93-21 (Exhibit U – Vanessa Termination Report); Docket 93-22 (Exhibit V – Dawn H Termination Report).

[19] Docket 96-2 at 15.  Ms. Blake also asserts, "[w]hen I was hired, I was informed by text that I had to "House Clean" the staff [at the] retail store.  In other words, I was told to terminate a number of employees.  The termination of these employees was not my decision."  Docket 114-1 (January 12, 2018 Affidavit of Suzanne Blake) at 11, ¶ 28 (citing Docket 114-9 (Text Exchange with Jesse Glamann)).  However, the text message from Jesse Glamann states only that "it would be a good opportunity to clean house."  In any event, Ms. Blake terminated employees throughout her tenure at Big Ray's.

[20] Docket 96-2 at 25.

[21] Docket 101-1 at 3, ¶ 15.  Ms. Blake maintains that she gave two weeks' notice on September 27, 2014; however, Classic terminated Ms. Blake on September 30, 2014.  Docket 120-1 at 13.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 5 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 5 of 40

20, 2016, Ms. Blake initiated this action against Classic, alleging that she was not paid for all of the time she worked, including the overtime hours for which she claims she was entitled to a rate equal to one-and-a-half times her usual rate.[22]  Ms. Blake alleges that Classic's actions violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").[23]  Ms. Blake also alleges violations of Alaska Law, AS 23.5.140–260, and the Alaska Wage and Hour Act, AS 23.10.50–150 ("AWHA"), and a violation the implied covenant of good faith and fair dealing.[24]  Ms. Blake's Complaint also alleges that she "was not paid her final two days wages after separation nor was she paid her appropriate overtime in accordance with Alaska law."[25]  In July 2016, after the Complaint was filed, Classic paid Ms. Blake her wages for these two days.[26]  However, Ms. Blake seeks a statutory penalty for the delay.[27]

//

//

//

---

[22] Docket 1 at 3, ¶¶ 8–12, 36.

[23] Docket 1 at 5–6.

[24] Docket 1 at 6–7.

[25] Docket 1 at 6, ¶¶ 35–36 (citing AS 23.05.140–260 and AS 23.10.50–150).  On October 28, 2014, Ms. Blake submitted a claim with the Alaska Department of Labor, demanding that she be paid for her last two days of work, as well as for her overtime hours.  Docket 134-13 (Wage Claim) at 1–3.  A copy of this claim was sent to Mr. Rostad on November 14, 2014, with an explanatory letter.  Docket 134-14 (Letter) at 1.

[26] Classic provides evidence that on July 18, 2016, it paid Ms. Blake the remaining $476.93 owed to her.  Docket 112-2 (Exhibit B – Letter and Check).  Ms. Blake appears to acknowledge having been paid for her final two days.  Docket 101-1 at 4, ¶ 16.

[27] Docket 114 at 8.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 6 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 6 of 40

B.  Catherine Scalf

The following facts are undisputed:

Plaintiff Catherine Scalf worked at Big Ray's from early 2006 until the summer of 2015.[28]  During her final three years working there, her title was Corporate Sales Manager ("CSM").[29]  Ms. Scalf's average annual compensation, including salary and benefits, from 2012 to 2015 was $52,910.[30]

On April 6, 2016, Ms. Scalf filed a Complaint in this Court, alleging that Classic's actions violated the FLSA, 29 U.S.C. § 201, *et seq.*[31]  Ms. Scalf also alleges violations of Alaska Law, AS 23.5.140–260, and the AWHA, AS 23.10.50–150, and a violation of the implied covenant of good faith and fair dealing.[32]  On December 5, 2016, Ms. Scalf's case was consolidated into Ms. Blake's similar case against Classic.[33]

The parties dispute a number of facts relating to the character of Ms. Scalf's job duties.  According to Classic, the facts are as follows:

Despite Ms. Scalf's claims to the contrary, Ms. Scalf did in fact have the authority to hire and fire employees.[34]  Ms. Scalf supervised employees in her department, as she

---

[28] Docket 96-5 (Catherine Scalf Deposition) at 4–5; Docket 103 at 2, ¶ 2.  Ms. Scalf stated in her affidavit that her final date was June 2, 2015.  Docket 103 at 2, ¶ 2.  However, Ms. Scalf's Complaint alleges that her last day at Big Ray's was August 2, 2015.   *See* 4:16-cv-00014-SLG, Docket 1 at 2, ¶ 6.  Monty Rostad also stated that August 2, 2015 was Ms. Scalf's final date.  Docket 90 at 9, ¶ 15.

[29] Docket 103 (Dec. 4, 2017 Affidavit of Catherine Scalf) at 1, ¶ 2.

[30] Docket 85 at 2.

[31] *See* 4:16-cv-00014-SLG, Docket 1 at 5–6, ¶¶ 22–32.

[32] *See* 4:16-cv-00014-SLG, Docket 1 at 6–7, ¶¶ 33–39.

[33] Docket 51 (Order Granting Motion to Consolidate).

[34] Docket 90 (Affidavit of Monty Rostad) at 9–10, ¶ 16.  In her deposition, Ms. Scalf

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 7 of 40

acknowledged in her deposition.[35]  Ms. Scalf also signed contracts on behalf of Classic

and went on sales calls in an effort to establish new customer accounts.[36]  Ms. Scalf

made bids on behalf of Classic.[37]  Ms. Scalf also had input into the budget.[38]

Ms. Scalf's view of these facts is as follows:

Ms. Scalf was "nominally in charge of the corporate sales department and

embroidery department of the Fairbanks downtown store."[39]  Nevertheless, Ms. Scalf

maintains that "approximately ninety percent of [her] time was spent taking, invoicing and

filling purchase orders from corporate customers and their employees."[40]  Ms. Scalf

described her duties as follows during her deposition:

---

acknowledges that one of her management responsibilities was terminating employees.  Docket 96-5 at 6.

[35] Docket 96-5 at 8.

[36] Docket 96-5 at 5, 9, 11–12.

[37] Docket 94-23 (Exhibit AW – Email); Docket 96-5 at 13; Docket 113-1 at 3, ¶ 9.

[38] Docket 9-5 at 9 (Q: "[P]art of your job in the budgeting process was to make recommendations as to how the budget might be changed."  Ms. Scalf: "That's right.").

[39] Docket 103 at 1–2, ¶ 2.  Ms. Scalf stated during her deposition that she began working at Big Ray's in 2006 as a mail order supervisor, a non-exempt position for which she was paid hourly, including overtime.  Docket 96-5 at 22.  Ms. Scalf also stated that she was promoted to a salaried position in 2008.  Docket 96-5 at 16.  However, the statute of limitations under the FLSA limits Ms. Scalf's claims to conduct during no more than the last three years of her employment and Ms. Scalf does not attempt to state a claim for overtime wages outside this time period.  *See* 29 U.S.C. § 255.  "Pursuant to § 255(a), the two-year statute of limitations for actions under the FLSA may be extended to three years if an employer's violation is deemed 'willful.'"  *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016).  Ms. Scalf's Complaint alleges that Classic's failure to comply with the overtime requirements of the FLSA was willful.  *See* 4:16-cv-00014-SLG, Docket 1 (Scalf Compl.) at 3–4, ¶ 13–21.

[40] Docket 103 at 2, ¶ 2.  In her affidavit, Ms. Scalf makes a number of statements that appear either conclusory or inconsistent with her deposition testimony.  *See* Docket 103 at 2, ¶ 4 ("I had no role . . . in handling employee complaints and grievances, disciplining employees, controlling the flow and distribution of materials or merchandise and supplies, providing for safety and security of employees or property, or in monitoring or implementing legal compliance measures."); Docket 103 at 3, ¶ 8 ("During my employment at Big Ray's I did not hire or fire any

---

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 8 of 40

I took phone calls; I fitted the customers, cleaned the department . . . stocked the FR clothing, invoiced the customers and [gave] them a receipt, taking the garments over to embroidery so they can be embroidered. . . . [I]f I was the first one at the store and it snowed, I shoveled the snow.

When we were on the main floor, there was a whole bank of windows that faces the parking garage. I kept those clean because there was always nasty stuff on the windows, so I always would keep those clean and any other duties that needed to be done.[41]

Ms. Scalf stated that during her final two and a half years at Big Ray's, she supervised one full-time employee; for a few months during that time, she supervised a second full-time employee and a part-time employee.[42] Ms. Scalf stated that although she made bids and signed contracts and corporate agreements on behalf of Classic, she did not have the independent discretion to make these decisions.[43]

C. Motions for Summary Judgment

On December 1, 2017, the parties all filed dispositive motions. Classic's motion asserts that Ms. Blake and Ms. Scalf were each undisputedly exempt executive or administrative employees, or a combination of both, under both the FLSA and the

---

employees and never had authority to do so. Nor did I have any significant input as to whether any employees were hired, fired, or promoted."); Docket 103 at 3, ¶ 3 ("During my employment with Big Ray's . . . . I did not carry out major assignments in conducting the operations of the business or perform work that substantially affected business operations. I did not have authority to commit Big Ray's in matters that had a significant financial impact or authority to negotiate and bind the company on significant matters."). To the extent these and other such statements are conclusory or are contradicted by her deposition testimony, the Court does not consider them. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (holding district court can apply sham affidavit rule to "prevent[] a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting h[er] own prior testimony." (quotations and alterations omitted)).

[41] Docket 96-5 at 22.

[42] Docket 103 at 3, ¶ 7.

[43] Docket 96-5 at 5, 11, 21–22; Docket 113-1 at 2–3, ¶ 7, 9.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 9 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 9 of 40

AWHA.[44]  Classic asserts that the claim of breach of implied covenant of good faith and fair dealing also fails.  Ms. Scalf's Motion for Partial Summary Judgment contends that because she engaged primarily in non-exempt work, as a matter of law she is entitled to overtime pay.[45]  Ms. Blake's Motion for Partial Summary Judgment likewise asserts that as a matter of law, she was a non-exempt employee who was unlawfully denied overtime pay.[46]

## DISCUSSION

### I. Jurisdiction and Applicable Law

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law, 29 U.S.C. § 201, *et seq*.  The Court has supplemental jurisdiction over Plaintiffs' related state law claims.[47]

The Court applies federal procedural law; Alaska substantive law applies to the state law claims.[48]

### II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) directs a court to grant summary judgment if the movant "show[s] that there is no genuine issue as to any material fact and that [the

---

[44] Docket 83; Docket 92 at 4; *see* Docket 111-1.

[45] Docket 97; Docket 98.

[46] Docket 100; Docket 101.  Both Ms. Blake and Ms. Scalf seek summary judgment only as to liability and propose to leave the issue of their damages for trial.

[47] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[48] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 10 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 10 of 40

movant] is entitled to a judgment as a matter of law." When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor."[49] When faced with cross-motions for summary judgment, the court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[50] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[51] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[52]

## III. Applicable Laws

### A. Fair Labor Standards Act

The FLSA requires that employers pay overtime wages to employees who work more than 40 hours per week.[53] However, "[e]mployees who are employed in executive, administrative, or professional capacities are exempt from that overtime requirement."[54] Regulations define whether an employee is "employed in a bona fide executive, administrative, or professional capacity" so as to be exempt under 29 U.S.C. § 213(a)(1).

---

[49] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[50] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. For Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

[51] *Anderson*, 477 U.S. at 248.

[52] *Id.* at 249–50.

[53] 29 U.S.C. § 207(a)(1).

[54] *Klem v. Cty. of Santa Clara, California*, 208 F.3d 1085, 1089 (9th Cir. 2000) (citing 29 U.S.C. § 213(a)(1)).

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 11 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 11 of 40

According to the regulation in effect during the relevant time,[55] the executive exemption applies to an employee who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[56]

The applicable regulation defines an administrative employee as one who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[57]

An employee can also be exempt under the "combination exemption." Under that exemption,

> [e]mployees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for

---

[55] Ms. Blake's claims relate to the period from August 2013 to September 2014. Docket 1 at 2, ¶ 4. Ms. Scalf's claims relate to the period from 2012 to 2015. Docket 103 at 1–2, ¶ 2; *see* 4:16-cv-00014-SLG, Docket 1 at 2–3, ¶ 7. Because Ms. Blake and Ms. Scalf's period of employment at issue in this case was from 2012 to 2015, the Court applies the version of the Department of Labor's regulations implementing the FLSA as amended in 2004. These regulations were amended again in 2016, but were precluded from taking effect due to a nationwide injunction. *See Nevada v. United States Dep't of Labor*, 275 F. Supp. 3d 795, 799 (E.D. Tex. 2017). That case is currently on appeal to the Fifth Circuit.

[56] 29 C.F.R. § 541.100(a) (2004).

[57] 29 C.F.R. § 541.200 (2004).

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 12 of 40

example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption.[58]

The applicable regulation defines "primary duty" to mean "the principal, main, major or most important duty that the employee performs."[59] In other words, an employee's primary duty is what she does that is of "principal value" to her employer.[60] Determining an employee's primary duty may involve consideration of a number of factors, including: (1) the relative importance of the exempt duties as compared with other types of duties, (2) the amount of time spent performing the exempt work, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.[61] Ultimately, "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."[62]

"FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit."[63]

---

[58] 29 C.F.R. § 541.708 (2004).

[59] 29 C.F.R. § 541.700(a) (2004).

[60] *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) ("[T]he employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time.")). In *Baldwin*, the Ninth Circuit affirmed the district court's grant of summary judgment to the defendants—the plaintiffs' employer and its president—finding the plaintiffs were exempt executive employees despite spending approximately ninety percent of their time on non-exempt tasks. *Id.* at 1113, 1120.

[61] 29 C.F.R. § 541.700(a) (2004).

[62] 29 C.F.R. § 541.700(a) (2004).

[63] *Klem v. Cty. of Santa Clara, California*, 208 F.3d 1085, 1089 (9th Cir. 2000) (quotations and

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 13 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 13 of 40

"The employer always has the burden of showing the exemption applies to its employee."[64]   The standard of proof for an exemption is "preponderance of the evidence."[65]  "The question of how the Employees spent their working time is a question of fact . . . . The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law."[66]

### B.  Alaska Wage and Hour Act

The Alaska Wage and Hour Act, like the FLSA, requires employers to pay overtime wages, equal to one and one-half times the regular rate, to employees who work more than 40 hours per week.[67]  Like the FLSA, the AWHA exempts individuals employed "in a bona fide executive, administrative, or professional capacity" from the overtime

---

alterations omitted).

[64] *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012).

[65] *See Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 308 n.14 (Alaska 2014) (noting that most circuits, including the Ninth Circuit, have adopted a preponderance of the evidence standard (citing, e.g., *Dickenson v. United States*, 353 F.2d 389, 392 (9th Cir. 1965))); *see also Duff-Brown v. City & Cty. of San Francisco*, 2013 WL 163530, at *4 (N.D. Cal. Jan. 15, 2013) ("The Court agrees that the burden of proof at trial in this case is the preponderance standard applicable in federal civil cases generally." (citing *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 507 (7th Cir. 2007))).

[66] *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1068 (9th Cir. 1990) (quotations and alterations omitted).

[67] AS 23.10.060.  One difference between the FLSA and the AWHA is that under the AWHA, in order to qualify as an exempt employee, one must be paid on "a salary or fee basis at a rate of not less than two times the state minimum wage for the first 40 hours of employment each week." AS 23.10.055(b).  Here, this distinction is not consequential because both Ms. Blake and Ms. Scalf were paid more than this amount, given that the Alaska minimum wage was $7.75 per hour from 2010 through 2014 before rising to $8.75 per hour in 2015.  *See* Minimum Wage Standard and Overtime Hours, Alaska Division of Labor Standards and Safety, http://labor.alaska.gov/lss/whact.htm (last visited Aug. 20, 2018).

requirement.[68]  In 2005, the Alaska Legislature amended the AWHA to adopt the federal definitions of executive, administrative, and professional employees.[69]  Accordingly, the Alaska Supreme Court has held that when determining whether an employee is exempt under the AWHA, "trial courts should . . . apply the 'primary duty test' of [DOL regulations]."[70]

However, while it is settled law that the standard of proof for an exemption under the FLSA is the preponderance of the evidence standard, it is not entirely clear what standard the Alaska Supreme Court would apply at this time.  In 1993, in *Dayhoff v. Temsco Helicopters, Inc.*, the Alaska Supreme Court adopted a "beyond a reasonable doubt" standard to establish an exemption under Alaska law.[71]  *Dayhoff* has not been expressly overruled.  However, in *Resurrection Bay* the Alaska Supreme Court more recently held:

---

[68] AS 23.10.055(a)(9).

[69] AS 23.10.055(c)(2) ("In (a)(9) of this section, 'bona fide executive, administrative, or professional capacity' has the meaning and shall be interpreted in accordance with 29 U.S.C. 201–209 (Fair Labor Standards Act of 1938), as amended, or the regulations adopted under those sections.").

[70] *Moody v. Royal Wolf Lodge*, 339 P.3d 636, 641 (Alaska 2014).  While *Moody* involved the professional exemption, rather than the executive or administrative exemptions, the Alaska Supreme Court's recognition that Alaska now "relies on" federal law in determining whether an exemption applies under the AWHA makes clear that the Court would apply the relevant federal regulations to claims relating to the executive or administrative exemptions.  *See id.* at 639 & n.15, 641.

[71] 848 P.2d 1367, 1372 (Alaska 1993) ("If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be ruled non-exempt."); *see also Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 884 (Alaska 2004) ("The burden is on the employer to prove beyond a reasonable doubt that the employee is exempt." (citing *Dayhoff*, 848 P.2d at 1372)).  Notably, at the time *Dayhoff* was decided, many federal courts, including the Ninth Circuit, were applying a preponderance of the evidence standard.  *See Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562 (11th Cir. 1991); *Dickenson v. United States*, 353 F.2d 389, 392 (9th Cir. 1965).

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 15 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 15 of 40

[a] federal statute, the Fair Labor Standards Act (FLSA), applies concurrently and requires overtime pay under circumstances identical to those identified in the AWHA. The terms used in the AWHA, if not defined in Alaska law, carry the definitions used in the FLSA.[72]

But the Alaska Supreme Court also recognized in *Resurrection Bay* that a preponderance of the evidence standard is applied under federal law, contrary to state law.[73] Thus, it may be that the Alaska Supreme Court, if presented the question, might overrule its earlier precedent and find that the federal preponderance of the evidence standard now governs AWHA claims.[74] However, it has not yet considered this issue. Therefore, in the absence of an opinion by the Alaska Supreme Court that overrules *Dayhoff*, this Court will apply the beyond a reasonable doubt standard to the AWHA claims.

## IV. Analysis

### A. Suzanne Blake

#### 1. Executive Employee

Classic maintains that Ms. Blake was an exempt executive employee. To prevail on this claim on summary judgment, Classic must demonstrate that when the evidence is viewed in the light most favorable to Ms. Blake, she meets the four-part test set out in 29

---

[72] 338 P.3d at 308 (internal citations omitted); *see Moody*, 339 P.3d at 639 (noting that "[i]n 2005 . . . the Alaska Legislature amended AWHA to adopt the federal definition[s]" of bona fide executive, administrative, and professional employees).

[73] *Resurrection Bay*, at 308 n.14 (Alaska 2014) ("We have held [] that employers are required to prove AWHA exemptions beyond a reasonable doubt. Although the burden-of-proof issue is not raised on appeal, we note that other than the Fourth, the circuits that have explicitly adopted a standard of proof for the applicability of FLSA exemptions require proof by a preponderance of the evidence." (internal quotation and citations omitted)).

[74] As discussed further herein, the Court will certify the question regarding the burden of proof standard under Alaska law to the Alaska Supreme Court. *See infra* p. 39.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 16 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 16 of 40

C.F.R. § 541.100(a).[75]

    a. Compensation of at least $455 per week

It is undisputed that Ms. Blake received a salary of at least $455 per week.[76]

    b. Primary duty

The second element requires Classic to show that Ms. Blake's primary duty was management. The relevant regulation provides:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[77]

Classic contends that "Ms. Blake's position with Classic Alaska was akin to the store manager's position in *Family Dollar*," a case in which the plaintiff-employee was found to be an executive employee at the summary judgment stage despite her contention that "99% of her time was devoted to nonexecutive duties."[78] There, the court

---

[75] *See supra* note 56.

[76] *See* Docket 96-2 at 48; Docket 93-4 (Exhibit D – Summary of Employment Terms). Ms. Blake would also meet the minimum salary under the Alaska standard, which under current law amounts to $620 per week. *See supra* note 67.

[77] 29 C.F.R. § 541.102 (2004).

[78] Docket 125 at 8 (citing *In re Family Dollar FLSA Litigation*, 637 F.3d 508, 515–16 (4th Cir. 2011)).

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 17 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 17 of 40

found that "while [the plaintiff] performed nonmanagerial tasks around the store as she determined necessary, she *concurrently* performed the managerial duties of running the store."[79] Citing 29 C.F.R. § 541.106, the court held "[t]his multi-tasking—doing management jobs while doing nonexempt work—is explicitly recognized as a managerial duty by the Department of Labor's regulations."[80] That regulation states:

> [A]n assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves.[81]

The court concluded that the employee was an exempt executive and affirmed summary judgment for the defendant.[82] While not binding on this Court, *Family Dollar* illustrates how an employee's primary duty may be management even when that employee spends most of her time on non-exempt tasks.[83]

Determining whether management was Ms. Blake's "primary duty" requires consideration of several factors.[84] First, the Court looks at the "relative importance of the

---

[79] *Family Dollar*, 637 F.3d at 515–16 (emphasis in original).

[80] *Family Dollar*, 637 F.3d at 516.

[81] 29 C.F.R. § 541.106(a).

[82] *Family Dollar*, 637 F.3d at 518.

[83] By contrast, Ms. Blake offers a different case involving Family Dollar stores to supports her assertion that Ms. Blake's primary duty was not management. *See* Docket 120-1 at 11 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008)). However, the proposition for which Ms. Blake offers this case—that "[i]t was these managers' actual duties performed, and not the apparent duties proffered by the employer, that determined their FLSA status"—is not in dispute here. Docket 120-1 at 11.

[84] *See supra* note 61 and accompanying text.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 18 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 18 of 40

exempt duties as compared with other types of duties."  This factor "focuses on an employee's 'principal value' to the company."[85]  While the Court assumes, for purposes of the motion, that Ms. Blake spent the vast majority of her time performing non-exempt tasks, the record indicates that Ms. Blake routinely made important decisions relating to the daily management and functioning of the company, particularly with respect to personnel issues.[86]  Ms. Blake's decisions relating to the supervision of employees and management of a retail business would be more valuable to Classic than her non-exempt activities related to completing mail orders and working in the store.  The fact that Ms. Blake reported only to upper management, specifically Jesse Glamann and the company's owners, further evidences the significance of her role within the company and the importance of her managerial duties.[87]  Ms. Blake's managerial duties included evaluating and disciplining employees, as Ms. Blake describes in an email to Jesse Glamann on July 31, 2014.[88]  Ms. Blake also hired and fired employees, directed their work, and supervised them to ensure their compliance with instructions.[89] Ms. Blake also

---

[85] *Smalley v. Home Depot U.S.A., Inc.*, 2013 WL 1402348, at *10 (N.D. Cal. Apr. 5, 2013) (citing *Baldwin*, 266 F.3d at 1115).

[86] *See supra* notes 13–19 and accompanying text.

[87] *See infra* note 99; Docket 101-1 at 2, ¶ 7 (identifying Mr. Rostad, one of the company's owners, as her direct supervisor).

[88] Docket 93-5 (Exhibit E – Email to Jesse Glamann); *see* Docket 96-2 at 15 (Ms. Blake acknowledging she wrote the email to Jesse Glamann identified as Exhibit E).

[89] *See* Docket 93-5 at 1 (Ms. Blake stating "I hired a lady yesterday that will probably be let go in a week.  When they are LAZY the first day and complain about how tired they are and have a headache are not interested in even folding a shirt they aren't staying employed *for me*." (emphasis added)); *id.* ("I give [employee] tasks and usually have to follow up several times to get them finished."); *id.* ("I have given [employee] the final warning of smelling of alcohol.").

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 19 of 40
Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 19 of 40

had some level of input into the budget for her department.[90]  Perhaps most crucially, Ms. Blake retained her role as manager even while performing non-exempt tasks such as completing orders, as she acknowledged in her deposition.[91]

Second, the Court looks at "the amount of time spent performing exempt work." Here, Ms. Blake asserts that most of her time was spent performing non-exempt work, such as processing internet orders, assisting customers, and cleaning the premises.  For purposes of this motion, the Court assumes that such non-exempt tasks made up 85 to 90% of Ms. Blake's work day.[92]  However, the executive exemption may nonetheless apply.[93]

---

[90] In her deposition, Ms. Blake stated that her input into the budget amounted to "data entry" but acknowledged that, along with Jesse Glamann, she made efforts to secure more funding in the budget for additional staff.  Docket 96-2 at 23–24; *but see* Docket 101-1 at 3, ¶ 11 ("As MM, I had no role in developing the company budget, business strategies, or core entrepreneurial decisions.").

[91] Docket 96-3 at 5; *see Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114 (9th Cir. 2001) (noting that "one can still be managing if one is in charge, even while physically doing something else" (quoting *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982))).

[92] *See* Docket 101-1 at 2–3, ¶¶ 4, 9; Docket 101-1 at 3, ¶ 12 ("After being assigned the MM duties, about ninety-percent of the duties I performed were as ORSM or the daily tasks performed by non-exempt supervisors.").  Ms. Blake acknowledged that "[d]uring my February 23, 2017, deposition I believe I testified these duties made up about eighty-five percent of my duties."  Docket 101-1 at 2, ¶ 6.  However, in her affidavit she stated, "On reflection, I believe the ninety percent amount is more accurate."  Docket 101-1 at 2, ¶ 6.

[93] *See* 29 C.F.R. § 541.700(c) (2004) ("[F]or example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register."); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1114 (9th Cir. 2001) ("We do not presume that the executive exemption fails merely because the proportion of time spent on exempt managerial tasks is less than fifty percent, where . . . managerial duties are packaged in employment with nonmanagerial tasks, and the management function cannot readily and economically be separated from the nonexempt tasks."); *Jones v. Tiller*, 72 F.3d 138, 2015 WL 712674, at * 3 (10th Cir. 1995) ("[A]n employee can be classified as an exempt employee even though she performed, to some extent, the ordinary work performed by subordinate employees, which work

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 20 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 20 of 40

Third, the Court looks at "the employee's relative freedom from direct supervision." Although Ms. Blake was not completely without supervision, the scope of and character of her duties indicate that she was accorded a substantial amount of discretion in discharging her managerial duties. As discussed previously, Ms. Blake fired a number of employees.[94] Ms. Blake also had the authority to hire employees and she testified as to having hired approximately ten employees.[95] Ms. Blake's decisions to hire and fire employees did not require the approval of any other managers or the company's owners.[96] Ms. Blake acknowledged during her deposition that when she was hired, she understood that supervising employees would be part of her job, as would hiring and firing

---

was part of her supervisory duties." (citing *Barner v. City of Novato*, 17 F.3d 1256, 1261 (9th Cir. 1994))); *see also Branstetter v. Gen. Parts Distribution, LLC*, 2013 WL 6780672, at *10–11 (D. Or. Dec. 19, 2013) (granting summary judgment to defendant employer where plaintiff "spent only ten percent of his time performing management duties" and performed non-exempt tasks during the remaining ninety percent); *see also In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (upholding district court's application of executive exemption on summary judgment to defendant employer where plaintiff contended that 99% of her time was spent performing non-exempt tasks). *See supra* notes 13–19 (detailing Ms. Blake's managerial duties).

[94] *See* Docket 93-6 (Exhibit F – Termination Report); Docket 93-8 (Exhibit H – Termination Report).

[95] Docket 96-2 at 10.

[96] *See* Docket 93-15 (Exhibit O – Email) at 1. In Jesse Glamann's email to Ms. Blake, he states, "If you decide to release Jessica, keep in mind, Jason still works for us," which appears to indicate that the decision to fire the employee rested with Ms. Blake. In her deposition, Ms. Blake supported this interpretation: "I signed [Jessica's] termination paperwork." Docket 96-2 at 14.

In her deposition, Ms. Blake acknowledged having decision-making authority in hiring. Docket 96-2 at 10 (Q: "So the employees that are interviewed by you, you make the decision to hire them?" Ms. Blake: "If I thought they were a good fit.").

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 21 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 21 of 40

employees.[97]  Ms. Blake also acknowledged giving a raise to at least one employee.[98]

Furthermore, Ms. Blake acknowledged that her only superiors in the company were Jesse

Glamann, Cindy Benford, and its three owners.[99]    Therefore, Ms. Blake was

unquestionably a high-ranking manager within the company.  The facts, even when

viewed in the light most favorable to Ms. Blake, clearly indicate that Ms. Blake enjoyed

relative freedom from supervision.

Fourth, the Court looks at "the relationship between the employee's salary and the

wages paid to other employees for the kind of nonexempt work performed by the

employee."  Ms. Blake was paid $62,000 annually, while Classic provides evidence

indicating that the highest paid employee working under Ms. Blake was paid an annual

compensation of $36,985.[100]  This wide disparity between Ms. Blake's salary and the

wages of her subordinates strongly supports the applicability of the executive exemption

as to Ms. Blake.

Ms. Blake maintains that her "primary duties as MM consisted of a [sic] learning

how to ring up cash register sales; assist customers, clean the premises; make up sales

signs; straighten and fold clothes on display tables and racks; stock apparel and clothes;

---

[97] Docket 96-2 at 8.  Ms. Blake also testified that because she was the manager, employees would come to her and inform her when a fellow employee was performing poorly.  Docket 96-2 at 9.

[98] Docket 96-2 at 16.

[99] Docket 96-2 at 25 (Q: "So as I understand it, in your view, you answered to the following authority figures, was [sic] the owners of the company: Monty, Mark, and Mike, Jesse, and you mentioned Cindy as well." Ms. Blake: "Correct." Q: "Okay.  Anybody else?" Ms. Blake: "Not that I can recall."); *see also* Docket 93-1 (Exhibit A – Org. Chart) at 1 (showing Ms. Blake as a manager, below only the company's executive management).

[100] Docket 85 at 8, ¶ 19.  Ms. Blake does not dispute this contention.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 22 of 40

mow the lawn and shovel snow; opening and closing computer files; opening and closing the store; alarming the security system; and, other similar types of duties."[101] Ms. Blake also states that as ORSM, her "primary duties consisted of fielding internet and phone orders from customers and processing them, and manually updating the web site."[102] However, Ms. Blake's conclusory statements regarding her primary duties do not create a triable issue of fact. Rather, applying the four factors outlined in the FLSA and viewing the evidence in the light most favorable to Ms. Blake, it is clear that Ms. Blake's most important duty and her main contribution to the company lay not in the non-exempt tasks she performed much of the time, but in the performance of her managerial duties.[103] Examining the character of Ms. Blake's position as a whole, including her relative salary, the authority she exerted over other employees, and her relative freedom from supervision, the Court finds that Ms. Blake's primary duty was management.

### c. Customarily and regularly directs work of two or more employees

Ms. Blake meets the third element of an exempt executive employee because it is undisputed that she "customarily and regularly direct[ed] the work of two or more other employees."[104]

### d. Authority to hire and fire employees

Ms. Blake also meets the fourth and final element because she unquestionably

---

[101] Docket 101-1 at 3, ¶ 9.

[102] Docket 101-1 at 2, ¶ 4.

[103] *See supra* notes 59–62.

[104] *See supra* note 13 and accompanying text.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 23 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 23 of 40

had the authority to hire and fire employees, as previously described.[105]

In her motion, Ms. Blake asserts that her "primary duties did not include managing a department; or directing the work of two or more employees; or, exercising the authority to hire and fire employees."[106] However, Ms. Blake does not provide evidence that supports these assertions. To the contrary, the evidence in the record, including Ms. Blake's own deposition testimony, undisputedly demonstrates that Ms. Blake did in fact supervise employees.[107] Furthermore, Ms. Blake's conclusory affidavits do not establish a genuine issue of fact, to the extent they contradict her previous deposition testimony.[108]

Based on the foregoing, the Court finds that Classic has demonstrated that Ms. Blake meets each of the four elements laid out in 29 C.F.R. § 541.100(a).[109] When all justifiable inferences are drawn in Ms. Blake's favor, the Court finds that no reasonable

---

[105] *See supra* notes 18–19 and accompanying text.

[106] Docket 101 at 6.

[107] *See supra* note 13.

[108] *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting h[er] prior deposition testimony."). Although Ms. Blake filed more than one affidavit in this case, her December 1, 2017 affidavit in particular contains multiple conclusory statements that contradict her deposition testimony. *Compare* Docket 101-1 at 3, ¶ 9 ("My primary duties consisted of learning how to ring up cash register sales . . . mow[ing] the lawn and shovel[ing] snow . . . and other similar manual and/or mechanical types of duties.") *with supra* notes 13–19 (Ms. Blake acknowledging extensive managerial duties); *compare* Docket 101-1 at 3, ¶ 10 ("Responsibilities for hiring, firing and disciplining of employees at Big Ray's w[ere] distributed amongst floor supervisors, the MM, and HR.") *with supra* notes 17–19 (Ms. Blake acknowledging that she personally hired and fired numerous employees); *see supra* note 90 (contrasting Ms. Blake's contradictory statements regarding the budget).

[109] Classic also asserts that Ms. Blake qualifies as an exempt administrative employee or, in the alternative, she falls under the combination exemption. Docket 111-1 at 47–48. However, because the Court finds that Ms. Blake is an exempt executive employee, it does not address the application of the administrative or combination exemptions as applied to her.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 24 of 40

jury could find that Ms. Blake was not an exempt executive employee under the FLSA and AWHA.[110]

### 2. Penalty

Ms. Blake also maintains that she is entitled to a penalty pursuant to AS 23.05.140 due to Classic's failure to pay her wages for her final two days of work until after the deadline provided by that statute.[111] While Classic admits failing to pay Ms. Blake her outstanding wages until July 18, 2016, it asserts that "the nonpayment was in part the result of an accounting mistake and in part the result of Blake's failure to submit a leave slip to Classic Alaska's payroll department for her day off on September 29, 2014."[112]

It is within the Court's discretion to levy a penalty under AS 23.05.140.[113] Classic maintains that its "failure to pay Blake's final two days' compensation was not intentional

---

[110] Based on the strength of the undisputed evidence discussed above, the Court finds that a reasonable jury could not find by a preponderance of the evidence that Ms. Blake was not an executive employee under the FLSA. The Court also finds that even under the more rigorous beyond a reasonable doubt standard articulated by the Alaska Supreme Court in *Dayhoff*, Classic has established that the executive exemption applies to Ms. Blake. *See supra* pp. 2–6, 16–24.

In a recent filing, Classic states that "[i]n her Complaint, Blake asserted claims for alleged unpaid overtime only under the FLSA." Docket 137 at 3. This assertion is without merit. *See* Docket 1 at 6 (citing AS 23.10.50–150).

[111] Docket 120-1 at 9; *see* AS 23.05.140(d) ("If an employer violates (b) of this section by failing to pay within the time required by that subsection, the employer may be required to pay the employee a penalty in the amount of the employee's regular wage, salary, or other compensation from the time of demand to the time of payment, or for 90 working days, whichever is the lesser amount.").

[112] Docket 112 at 9; *see* Docket 112-2.

[113] *See Hallam v. Holland Am. Line, Inc.,* 27 P.3d 751, 756 (Alaska 2001) ("We note that penalties under AS 23.05.140 are not mandatory and that refusal to apply a penalty is within the trial court's discretion.").

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 25 of 40

or in bad faith" and that the Court should thus use its discretion to waive the penalty.[114] However, the record demonstrates that the Alaska Department of Labor and Workforce Development informed Classic on November 14, 2014 about Ms. Blake's wage claim.[115] Therefore, the Court denies summary judgment as to whether a penalty should be imposed and, if so, the amount of such penalty.

### B. Catherine Scalf

#### 1. Administrative Employee

Classic contends that Ms. Scalf was an administrative employee who was exempt from the overtime provisions of the FLSA. Ms. Scalf counters in her motion for summary judgment by asserting that "[t]he evidence presented shows that there is no genuine issue as to any material fact and that, as a matter of law, Catherine Scalf was not exempt from the overtime requirements of the Fair Labor Standards Act and Alaska Wage and Hour Act."[116] "To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers."[117] In order to demonstrate that Ms. Scalf is an exempt administrative employee, Classic must show that Ms. Scalf fulfills the three elements described in 29 C.F.R. § 541.200(a).[118]

---

[114] Docket 112 at 9–10.

[115] Docket 134-14 at 1–2 (letter from wage and hour investigator to Monty Rostad informing him that a wage claim was filed by Ms. Blake and stating that a copy of the wage claim was attached).

[116] Docket 98 at 9.

[117] 29 C.F.R. § 541.201(a) (2004).

[118] *See supra* note 56 and accompanying text.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 26 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 26 of 40

a. Compensation of at least $455 per week

It is undisputed that the first element was met during Ms. Scalf's employment.[119]

b. Primary duty is the performance of office or non-manual work directly related to the management or general business operations

As to the second element, Classic must show that Ms. Scalf's "primary duty [wa]s the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  As stated in the relevant regulation, "[t]o meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."[120]  "This requirement is met if the employee engages in 'running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs."[121]

In support of its motion, Classic provides the job description of the Corporate Outfitting Director position that Ms. Scalf held.[122]  However, a job description is not

---

[119] *See* Docket 98 at 7 ("Scalf acknowledges that the first element, a minimum level of compensation, was met during her employment with Classic Alaska.").  Ms. Scalf does not dispute that Ms. Scalf's compensation met the FLSA minimum as well as the higher minimum amount required under the AWHA.

[120] 29 C.F.R. § 541.201(a) (2004).

[121] *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (quoting *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990)).

[122] Docket 93-3 (Exhibit C – Job Description) ("The Corporate Outfitting Manager is responsible for all aspects of retail sales processed through the Orders and Fulfillment system relating to Corporate Outfitting / Embroidery Departments throughout the Company. The Corporate

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 27 of 40

dispositive—the actual work performed by the employee is determinative.[123]  Classic also provides a resume prepared by Ms. Scalf, which Ms. Scalf points out in her opposition is virtually identical to a job description of the Big Ray's commercial sales manager position.[124]   However, at her deposition, Ms. Scalf adopted much of the job description in that resume as accurately reflecting her job duties.[125]   Ms. Scalf acknowledged performing a number of tasks through which she contributed to the overall running of the business, particularly with regard to her role in establishing new customer accounts, maintaining existing customer relationships,[126] providing input into budget decisions,[127] and supervising employees.[128]

Nevertheless, Ms. Scalf asserts that she is entitled to summary judgment and that

---

Outfitting Director works closely with Ownership, Finance, Merchandising, Advertising and the Market Managers to execute overall company strategies. This position has ultimate responsibility for ensuring that Corporate and Embroidery orders are handled consistently and efficiently and customers are happy with their shopping experience through these channels.").

[123] *See Kelley v. SBC, Inc.*, 1998 WL 928302, at *8 (N.D. Cal. Nov. 13, 1998) ("This showing must be based on the actual nature of the duties performed by employee, not by the employee's title or job description.").

[124] *Compare* Docket 95–20 (Exhibit BT – Resume) at 1–2 *with* Docket 113-2 (Job Description).

[125] Docket 96-5 at 5–10.  Ms. Scalf stated during her deposition that she was being honest when she prepared the resume and provided it to her employer.  Docket 96-5 at 5.  She also specifically acknowledged elements of the resume to be accurate descriptions of her duties, including: establishing new accounts and attracting potential customers; recruiting, terminating, training, and monitoring employees; enforcing company policies and procedures; attending weekly management meetings to assure good communication between departments; creating monthly reports to track sales volume and ensure the commercial budget was accurately followed; and attending events for outside sales and promotions.  Docket 96-5 at 5–10.  Ms. Scalf also stated she signed contracts on behalf of Classic as the manager of the commercial sales department and made outside sales calls.  Docket 96-5 at 5.

[126] Docket 96-5 at 5, 9, 11–12.

[127] *See supra* note 38.

[128] Docket 96-5 at 8.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 28 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 28 of 40

she is non-exempt, and denies that her "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."[129]  Although Ms. Scalf's conclusory assertions cannot create a genuine issue of fact, Ms. Scalf also provides evidence that supports her contention that she was not an exempt administrative employee.  Ms. Scalf explains that although her title was manager of corporate sales, her actual work was largely ministerial as she did not have the ability to negotiate contracts with customers.[130]  Instead, the offers she made to customers were negotiated by other individuals within the company and included standard discounts.[131]  Ms. Scalf also explained that the resume she prepared listing her job skills included skills she had performed prior to her employment at Classic and were not reflective of her work there.[132]  Much of Ms. Scalf's sales work entailed advising individual customers on items that would suit their needs.[133]  In short, Ms. Scalf describes her primary role as selling a product in a retail establishment, which does not qualify for the administrative exemption, according to 29 C.F.R. §

---

[129] 29 C.F.R. § 541.200 (2004); Docket 98 at 7.

[130] Docket 96-5 at 5 (Q: "So negotiating—but you negotiated and closed the contracts with those commercial customers also."  Ms. Scalf: "No.  No.  It was all done through Anchorage.  I did not do—I did not negotiate any contracts.").

[131] Docket 96-5 at 5 (Q: "So there was a standard discount that was offered to commercial customers, and then part of your job was to go see if you could entice those different companies to come to Big Ray's?"  Ms. Scalf: "They—a lot of the commercial customers that we had were—I wouldn't say a lot.  But, over time, the customers, the commercial customers—the clientele built over time, and it was—like, Alyeska, those prices were negotiated in Anchorage.").

[132] Docket 9-5 at 6.

[133] Docket 96-5 at 5.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 29 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 29 of 40

541.201(a),[134] and was not directly related to the running of the business.[135]

Viewing the facts in the light most favorable to Ms. Scalf, Classic has not established that Ms. Scalf's primary duty undisputedly was office or non-manual work directly related to Classic's management or general business operations. Viewing the facts in the light most favorable to Classic, Ms. Scalf cannot establish that no reasonable jury would find that her primary duty was office or non-manual work directly related to Classic's management or general business operations. As such, neither party can meet the second element at the summary judgment stage.

c. Primary duty includes the exercise of discretion and independent judgment with respect to matters of significance

The third element requires that the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." Classic provides a payroll form as evidence that Ms. Scalf had input into the decision to give one employee a pay raise.[136] Classic also provided evidence that Ms. Scalf had the authority to hire and fire employees.[137] In addition, Classic provides evidence that Ms. Scalf had input into the discounts offered to corporate customers.[138] Ms. Scalf also went on

---

[134] "To qualify for the administrative exemption . . . . an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (2004).

[135] *See supra* note 41 and accompanying text.

[136] Docket 94-15 (Exhibit AO – Payroll Change Form).

[137] Docket 90 at 9–10, ¶ 16 (Monty Rostad testifying as to Ms. Scalf's authority). Classic also provides a termination report that Ms. Scalf completed concerning an employee that Ms. Scalf fired. Docket 94-13 (Exhibit AM – Termination Report).

[138] *See* Docket 90 at 12 (Monty Rostad explaining that while ownership had the ultimate say in "what discount was made available to a particular corporate customer," Ms. Scalf gave input into

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 30 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 30 of 40

independent sales calls and signed contracts with customers, albeit after speaking with her director.[139] Ms. Scalf also made bids on behalf of Classic.[140] Throughout Ms. Scalf's tenure as Corporate Outfitting Director, she supervised at least one full-time employee at all times, frequently supervised two full-time employees, and briefly supervised three employees, one of who whom was part-time.[141] Classic contends that this evidence indicates that Ms. Scalf possessed sufficient independence and discretion to meet the third element. Viewing the facts in the light most favorable to Classic, Classic has raised genuine factual issues sufficient to defeat Ms. Scalf's motion for summary judgment as to the applicability of the administrative exemption.

Ms. Scalf counters that she lacked the discretion and independent judgment to qualify as an exempt administrative employee.[142] In Ms. Scalf's deposition, she acknowledged that her responsibilities included recruiting, training, supervising, and monitoring employees.[143] However, while Ms. Scalf stated in her deposition that she had the authority to terminate employees, she asserted that Mr. Rostad or another supervisor

those decisions and had some leeway with regard to discounts given to smaller companies).

[139] *See* Docket 96-5 at 5–6.

[140] *See* *supra* note 37.

[141] Docket 85 at 3. Ms. Scalf acknowledges in her affidavit that she supervised two employees for a period, stating, "During the last two and one-half years of my employment at Big Ray's I supervised one full time employee in the Embroider Department, Melanie Baltrum. For a few months during that time period I supervised a second full time employee in the Embroidery Department and occasionally a part-time employee." Docket 103 at 3, ¶ 7.

[142] Docket 98 at 9.

[143] Docket 96-5 at 6–7.

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 31 of 40

would first have to approve the termination.[144]  Furthermore, Ms. Scalf maintained that she did not negotiate contracts.[145]  Taken together, Ms. Scalf's evidence suggests that while she had some level of independent authority, the majority of her decisions regarding matters of significance required approval from more senior managers.[146]  Ms. Scalf has shown sufficient factual disputes so as to defat Classic's motion for summary judgment on this exemption.

### 2. Executive Employee

Classic also contends that Ms. Scalf qualifies for the executive exemption.  Ms. Scalf disputes this, asserting that she was not an exempt executive employee and is entitled to summary judgment in her favor.[147]  In order to demonstrate that Ms. Scalf

---

[144] Docket 96-5 at 6.

[145] *See* Docket 96-5 at 5.  Ms. Scalf provides evidence indicating that her discretion in performing her duties was limited.  Ms. Scalf states in her January 12, 2018 affidavit that "[w]hile [she] did sign Corporate Agreements with the Defendant's customers, [she] was permitted to do so only after [her] supervisor had signed the agreement."  Docket 113-1 at 2–3, ¶ 7.  Ms. Scalf acknowledges preparing bids, but she states: "[W]hen new items were requested by corporate customers, I obtained the bid price from a Buyer.  If not a new item, I got its price off the Company's computer.  There was just one price for each item in the computer. Once, when a Buyer told me to discount a discontinued item, I got into trouble because the price in the computer had not been reduced by the Buyer when the transaction was reviewed by accounting. I had no authority to adjust merchandise prices."  Docket 113-1 at 3, ¶ 9.

[146] Ms. Scalf appends to her motion excerpts of the depositions of herself and Cindy Benford.  In Ms. Scalf's deposition, she stated that while she served as a commercial sales manager, she performed tasks such as taking phone calls, fitting customers, cleaning the department, restocking clothing, invoicing customers, taking garments to be embroidered, and shoveling snow.  Docket 98-1 (Scalf Depo. Excerpt) at 3.  While these activities are akin to the duties of a non-exempt employee, they were not the sole duties of Ms. Scalf during her time at Big Ray's. As described above regarding Ms. Blake, an individual can be found to be an exempt employee even if most of her day-to-day activities are akin to those of a non-exempt employee.  *See supra* notes 60, 93.  Therefore, Ms. Scalf's testimony that she regularly performed non-exempt activities does not definitively establish that she "lacked the discretion and independent judgment to be an exempt administrative employee," as she asserts.  Docket 98 at 9.

[147] Docket 98 at 9.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 32 of 40

qualifies as an executive employee, Classic must demonstrate that Ms. Scalf meets the aforementioned four-part test.[148]

      a.  Compensation of at least $455 per week

It is undisputed that Ms. Scalf meets this element.[149]

      b.  Primary duty is management

The second element requires Classic to show that Ms. Scalf's primary duty was management, upon consideration of the four factors of 29 C.F.R. § 541.700(a).[150]

There is conflicting evidence in the record as to whether Ms. Scalf's primary duty was management. With regard to the first factor, Classic points to Ms. Scalf's supervision of other employees as evidence that Ms. Scalf's primary duty was management.[151] Ms. Scalf also coordinated employee scheduling,[152] facilitated communication among employees, and represented Classic in her interactions with commercial customers.[153] As to the second factor, while Ms. Scalf appears to have spent a majority of her time on non-exempt tasks, her own description indicates that she performed managerial responsibilities while also performing her other duties.[154] Furthermore, the percentage of

---

[148] *See supra* note 56.

[149] *See supra* note 119.

[150] *See supra* note 61 and accompanying text.

[151] Docket 92 at 36; *see* Docket 96-5 at 7 (Ms. Scalf describing in her deposition that she monitored employees to ensure "the other employees were doing their job as they're supposed to do it and appropriately").

[152] Docket 96-5 at 7.

[153] *See supra* note 126.

[154] Docket 96-5 at 7 (Q: "And then monitoring employees, right?" Ms. Scalf: "Yes." Q: "And what did monitoring employees entail?" Ms. Scalf: "Meaning that—not to stand around and chitchat, sit on their phone all day." Q: "Sure." Ms. Scalf: "You know, keep their department

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 33 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 33 of 40

time spent on tasks is not dispositive as to her primary duty.[155]  As to the third factor, Ms.

Scalf directed employees and met independently with customers during her outside sales

calls.[156]  As to the fourth factor, Ms. Scalf was compensated at a considerably higher rate

than the non-exempt employees working beneath her.[157]

Ms. Scalf counters that she was not an exempt executive employee and is entitled

to summary judgment.  As to the first and second factors, Ms. Scalf asserts that most of

her responsibilities and duties were those of a non-exempt employee.   The majority of

her tasks appear to be related to retail sales, including fitting customers, making sales,

and providing invoices and receipts to customers.[158]  As to the third factor, the Court finds

that although Ms. Scalf had some independent responsibilities, there are genuine factual

disputes as to the degree of freedom from direct supervision she had when it came to

many of her duties.[159]  Finally, Ms. Scalf's salary was not so much higher than that of the

---

clean, help a customer and not be rude.  And proper phone etiquette was a big thing for me.").
Ms. Scalf's deposition testimony here is consistent with Mr. Rostad's statements that Ms. Scalf
was concurrently performing non-exempt tasks while serving in a managerial capacity.  *See*
Docket 90 at 14 (stating that "even though Ms. Scalf "may have concurrently performed duties
that could be characterized as both managerial and non-managerial," Ms. Scalf's primary role at
Classic was managerial).

[155] *See supra* note 93.

[156] Docket 96-5 at 8; *id.* at 5.

[157] Cindy Benson stated in her affidavit that Ms. Scalf's average annual compensation including
benefits during the period in question was $52,910, while the highest salaried employee working
beneath Ms. Scalf was paid $43,685 annually.  Docket 85 at 2, ¶ 4, 8–9, ¶ 19; *see* Docket 96-5
at 16–17.

[158] *See supra* note 41 and accompanying text.

[159] *See supra* note 145.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 34 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 34 of 40

non-exempt employees she supervised so as to clearly indicate that Classic considered her role to be that of a manager.[160]

When the evidence is viewed in the light most favorable to the non-moving party, neither Classic nor Ms. Scalf has shown there is no genuine issue of material fact as to whether Ms. Scalf qualifies for the executive exemption.  Because the existence of genuine issues of material fact preclude summary judgment for either party as to Ms. Scalf's primary duty, the Court does not address the remaining two components of the executive exemption.

### 3.  Combination Exemption

Classic also asserts that even if Ms. Scalf does not qualify exclusively as either an exempt administrative or executive employee, it is entitled to summary judgment on her claim because when the facts are viewed in the light most favorable to Ms. Scalf, she falls within the "combination exemption."[161]

---

[160] *See supra* note 157.  Furthermore, Ms. Scalf's salary was substantially lower than that of Ms. Blake, whose annual compensation including benefits was $69,716.47.  Docket 85 at 2, ¶ 3.

[161] Docket 111-1 at 47.  At oral argument, counsel for Classic asserted that while Ms. Scalf qualifies for the combination, administrative, and executive exemptions, she fits most squarely into the combination exemption:

> The Court: So which [exemption], if you had to pick, which you don't, you can argue them all, but if you had to pick one of those three for Ms. Scalf, which would you pick?
>
> . . .
>
> Counsel: I would say the combined exemption might be best for Ms. Scalf and then the administrative exemption and executive after that.  I frankly think she meets all, but I would put them in that order.

Docket 138 at 9-10.  *See supra* note 58 and accompanying text (explaining combination exemption); *but see Campanelli v. Hershey Co.*, 765 F. Supp. 2d 1185, 1197 (N.D. Cal. 2011) ("Employers, however, cannot 'tack various nonexempt duties and hope to create

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 35 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 35 of 40

Although the Court's previous discussion acknowledges that Ms. Scalf performed duties that implicate the administrative and executive employees to some extent, this fact is not enough to warrant summary judgment in favor of Classic.[162]   Given the Court's conclusion that genuine issues of material fact exist as to whether Ms. Scalf was either an administrative or executive employee, Classic's brief discussion of the combination exemption does not undisputedly demonstrate that that exemption applies under the FSLA.[163]   It necessarily follows that summary judgment is also unwarranted under the AWHA.[164]

Ms. Scalf does not specifically address the combination exemption in her motion. However, Ms. Scalf's assertions and evidence regarding the executive and administrative exemption are applicable to the analysis of the combination exemption.   In light of the aforementioned discussion of Ms. Scalf's management responsibilities, including her role in establishing relationships with outside customers and managing employees within Big Ray's, when viewing the evidence in the light most favorable to Classic, Ms. Scalf has not shown there is no genuine issue of material fact as to whether she qualifies as an exempt

---

an exemption.'" (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1232 (5th Cir. 1990))).

[162] *See Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011), *aff'd*, 567 U.S. 142 (2012) ("[An FLSA] exemption can only apply to persons plainly and unmistakably within its terms and spirit." (quotation and alterations omitted)).  Furthermore, the implementing guidelines provide less guidance as to how courts should apply the combination exemption, relative to the other exemptions.

[163] *See Webster v. Pub. Sch. Employees of Washington, Inc.*, 247 F.3d 910, 914 (9th Cir. 2001) ("An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." (quotation omitted)); *Campanelli v. Hershey Co.*, 765 F. Supp. 2d 1185, 1197 (N.D. Cal. 2011) (granting summary judgment to plaintiff where "[d]efendant has not presented specific evidence that plaintiffs primarily performed any combination of exempt duties to satisfy the combination exemption.").

[164] *See supra* pp. 15–16.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 36 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 36 of 40

employee under the combination exemption.

C. Implied Covenant of Good Faith and Fair Dealing

"Every employment contract in Alaska is subject to the implied covenant of good faith and fair dealing."[165]   The Alaska Supreme Court has described the covenant as follows:

> While lacking a precise definition, the covenant 'generally requires employers to treat like employees alike and act in a manner that a reasonable person would regard as fair.'   The covenant has two components, a subjective component and an objective component.  If an employer breaches either component, the employer breaches the implied covenant.[166]

Ms. Blake and Ms. Scalf each assert that Classic violated its covenant of good faith and fair dealing by "failing to pay [each plaintiff] the required overtime, and pay upon separation, as required by the FLSA and Alaska law."[167]  In its summary judgment motion, Classic states that "Blake and Scalf both left employment with Classic of their own voluntary accords" and that "neither Blake nor Scalf make a claim in their respective complaints that Classic took adverse employment action against them or terminated their employment."[168]

1. Suzanne Blake

Ms. Blake's claim for breach of the implied covenant of good faith and fair dealing

---

[165] *Crowley v. State, Dep't of Health & Soc. Servs.*, 253 P.3d 1226, 1230 (Alaska 2011).

[166] *Crowley*, 253 P.3d at 1230 (internal citations omitted).

[167] Docket 1 at 7, ¶ 39; 4:16-cv-00014-SLG, Docket 1 at 7, ¶ 38.

[168] Docket 111-1 at 49.  Both Ms. Blake and Ms. Scalf acknowledge that they resigned voluntarily from their positions.  Docket 101-1 at 3, ¶ 15; Docket 103 at 2, ¶ 2.  However**,** Ms. Blake also states that she was subsequently fired and payment for her final two days of work was unlawfully delayed.  *See supra* notes 21, 25, 26.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 37 of 40

primarily depends on a finding that she was improperly denied overtime wages in violation of the FLSA and AWHA.[169]  Therefore, because the Court finds that Classic did not unlawfully deny overtime wages to Ms. Blake, Ms. Blake's claim for breach of the implied covenant of good faith and fair dealing must also fail.  However, to the extent that Ms. Blake's breach of the implied covenant of good faith and fair dealing claim is based on Ms. Blake's allegations regarding Classic's delayed payment for her final two days' wages due to her under her employment contract, Classic's motion for summary judgment is denied as to that claim.

### 2.  Catherine Scalf

The only plausible basis for Ms. Scalf's claim of breach of the implied covenant of good faith and fair dealing is her employment contract with Classic.[170]  However, Ms. Scalf offers no evidence that overtime pay was part of her employment contract with Classic.  Therefore, the implied covenant of good faith and fair dealing does not entitle her to overtime pay.[171]  Rather, because Ms. Scalf claims that the FLSA and AWHA entitle

---

[169] Docket 120-1 at 13 ("If found to be a nonexempt employee, then Ms. Blake obviously has a legitimate and reasonable expectation that she be paid overtime as required by law. Any reasonable person would determine it to be unfair for an employer not to pay overtime if required to do so by law.").

[170] *See* 4:16-cv-00014-SLG, Docket 1 at 6, ¶ 37 ("The State of Alaska implies a covenant of good faith and fair dealings within all employment contracts.").  Ms. Scalf does not dispute that she resigned voluntarily.  *See supra* note 28 and accompanying text.  Ms. Scalf's Complaint states that Classic "violated its covenant of good faith and fair dealing with the Plaintiff by intentionally failing to pay her overtime hours as required."  4:16-cv-00014-SLG, Docket 1 at 7, ¶ 39.  Ms. Scalf does not allege any facts to support a claim that payment of her wages at separation was denied or delayed.

[171] *See Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997) ("The covenant of good faith and fair dealing is implied in every contract in order to effectuate the reasonable expectations of the parties to the agreement, not to alter those expectations.").

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 38 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 38 of 40

her to overtime, it is these statutes that provide the exclusive remedy to Ms. Scalf for any failure by Classic to pay overtime.[172]  Therefore, Classic is entitled to summary judgment on Ms. Scalf's claim for breach of the implied covenant of good faith and fair dealing.

D. Motion to Certify

Classic requests that this Court "exercise[] its discretion to certify a question of Alaska State law to the Alaska Supreme Court under Alaska Appellate Rule 407."[173]  In light of the denial of the cross motions for summary judgment as to Ms. Scalf and the potential uncertainty regarding the applicable evidentiary standard under the AWHA, the Court will grant the motion to certify. A separate order shall be issued requesting that the Alaska Supreme Court answer the following question:

> What burden of proof applies to the determination of whether an employee is exempt from the overtime requirements of the Alaska Wage and Hour Act as an executive or administrative employee?

## CONCLUSION

In light of the foregoing, Classic's Motion for Summary Judgment at Docket 83 is GRANTED as to Ms. Blake's claims pursuant to the FLSA, AWHA, and breach of the implied covenant of good faith and fair dealing, to the extent the latter claim is based on Classic's alleged failure to pay overtime wages.   Classic's motion is DENIED as it relates

---

[172] *See Nickels v. Napolilli*, 29 P.3d 242, 250 (Alaska 2001) (holding "[t]he employer's failure to provide workers' compensation insurance does not create a separate contract cause of action, even though the obligation to provide workers' compensation insurance is incorporated into every employment contract.").  Here, Ms. Scalf's claims similarly rest on rights incorporated into employment contracts by statute—although the statutes at issue are the FLSA and AWHA, rather than the workers' compensation statute involved in *Nickels*.

[173] Docket 137-1 (Proposed Order) at 1.

Case No. 4:16-cv-00005-SLG,  *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 39 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 39 of 40

to the penalty Ms. Blake seeks against Classic for delayed payment for her last days at work and the related breach of the implied covenant of good faith.

Classic's motion is DENIED as to Ms. Scalf's FLSA and AWHA claims.

Ms. Blake's Motion for Partial Summary Judgment at Docket 100 is DENIED.

Ms. Scalf's Motion for Partial Summary Judgment at Docket 97 is DENIED.

Classic's Motion to Certify at Docket 137 is GRANTED. A separate order of certification shall be issued.

DATED this 27th day of August, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 4:16-cv-00005-SLG, *Blake, et al. v. Classic Alaska Trading/Big Ray's Alaska, Inc.*
Order Re Pending Motions
Page 40 of 40

Case 4:16-cv-00005-SLG   Document 140   Filed 08/27/18   Page 40 of 40